196 F.2d 689
 JOHNSTON-WARREN LINES, Limited,
v.
UNITED STATES et al.
ISTHMIAN S.S. CO.
v.
THE JESSMORE et al.
INSURANCE CO. OF NORTH AMERICA et al.
v.
UNITED STATES et al.
STANDARD MARINE INS. CO. et al.
v.
UNITED STATES et al.
THE LONGVIEW VICTORY.
 No. 221, Docket 22303.
 United States Court of Appeals Second Circuit.
 Argued April 16, 1952.
Decided May 15, 1952.
 
 Burlingham, Veeder, Clark & Hupper, New York City (Chauncey I. Clark and Adrian J. O'Kane, New York City, of counsel), for appellee Johnston-Warren Lines, Ltd., and M/V Jessmore.
 Kirlin Campbell & Keating and John F. Gerity, all of New York City, for Isthmian S.S. Co.
 Bigham, Englar, Jones & Houston, New York City (Chas. A. VanHagen, Jr., New York City, of counsel), for Insurance Co. of North America et al., and Standard Marine Ins. Co. et al., libelants-appellees.
 Myles J. Lane, U.S. Atty., for Southern District of New York, New York City, for United States of America.
 Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit judges.
 FRANK, Circuit Judge.
 
 
 1
 At 1.50 in the morning of October 19, 1947, twenty-three miles east of the Ambrose Light Vessel, the British vessel Jessmore collided with the United States-owned Longview Victory, under charter to the Isthmian S.S. Company. The Jessmore had been proceeding since 11.15 p.m. of the preceding night on a course of 99 degrees from a point a short distance south of the Ambrose Light Vessel. She had her navigation lights on and was sounding fog signals, albeit feeble ones, at approximately one-minute intervals. Her speed was about eight or nine knots. Her witnesses testified that at 1.47 a.m. the fog-whistle of another vessel as heard dead ahead, forward of the beam. They said that the Jessmore stopped her engines for a minute before sighting the mast headlights of the Longview Victory directly ahead, about 2,000 feet away. The trial judge found, however, and there is ample evidence to sustain his findings, as follows: Before the Longview came into sight, the Jessmore starboarded her helm. On sighting the Longview, the Jessmore put her rudder hard right about 70-80 degrees, her engines dead slow ahead, and sounded a one-blast passing signal. The Longview answered with a one-blast passing signal; the exchange of signals was repeated, but the Longview appeared to be heading toward the Jessmore's port. At 1.49 a.m. the Jessmore put her engines full speed ahead, and her rudder hard left, in an attempt to avoid collision with the Longview's bow. At 1.49 1/2 a.m. the latter's bow struck at a right angle the Jessmore's port, penetrating fifteen feet.
 
 
 2
 The Longview's crew testified that at 1.43 a.m., while proceeding on a course of 272 degrees with the lighthouse, at approximately six knots, the lookout thought he heard a fog whistle ahead, and reported it to the third mate who came in to the chartroom in order to answer the telephone. The mate walked over to the walkway in front of the wheelhouse and waited there until he heard the signal himself; then he returned to the wheelhouse and stopped the engines. The Longview waited a few minutes, blowing fog signals all the time, before the Jessmore's mast headlights were seen bearing down on the Longview's starboard, followed by the green and red lights of the Jessmore, about 1,000 feet away. The Longview, anticipating a collision with the fast-speeding Jessmore, put her wheel hard left in an attempt to cant the Longview's bow to port, at the same time sounding a one-blast whistle signal indicating that she would direct her course to the right. At 1.47 a.m., the wheelsman reported no steerageway, and the Longview made a second attempt to cant her bow to port by putting her engines full speed ahead. A minute later, the Longview stopped her engines and in another half minute tried unsuccessfully to full astern. The stem of the Longview, then dead in the water, made contact with the Jessmore's port side at 1.50 a.m.
 
 
 3
 On these facts, the trial judge found both vessels at fault, the Jessmore for proceeding at an immoderate speed in fog conditions, for alternating her course under hard right rudder before sighting the Longview, and so preventing what would otherwise have been a safe starboard passing, for failing to hear, through inattention or otherwise, the Longview's fog signals until four minutes after they were sounded. The Longview was held to be at fault for violating Rule 16 of the International Rules, 33 U.S.C.A. § 92, and not stopping immediately when the lookout reported that he 'thought' he heard a fog signal ahead. In addition, the judge scored the Longview's failure to reverse her engines on sighting the Jessmore when a collision could still have been avoided. It also appears, on the undisputed facts, that the Longview was negligent, after sighting the Jessmore, in not sounding a two-blast signal but, instead, sounding a one-blast passing signal in answer to the Jessmore's one-blast when, in fact, she was putting her rudder left preparatory to making a starboard crossing. See Article 28 International Rules, 33 U.S.C.A. § 113. The Longview is appealing from the decision holding it partially responsible for the collision.
 
 
 4
 She argues, we think unreasonably, as follows: Article 16 requires vessels in fog conditions to stop only when they actually 'hear'- are sure they hear- the fog signal of another vessel forward of the beam; the lookout here only 'thought' he heard a fog signal; the third mate consequently waited until he himself heard the signal, perhaps a minute later, before giving the order to stop. Thus, at a speed of six knots, over 600 feet was traveled in that interval, bringing the Longview that much nearer to the path of the Jessmore. As far as we are concerned, the only sensible interpretation of an anti-collision rule like Article 16 is that ships must stop when they hear something which they have good reason to suspect is a fog whistle ahead. This has long been held; New York & Cuba Mail S.S. Co. v. United States, 2 Cir., 16 F. (2d) 945; Lie v. San Francisco & Portland S.S. Co., 243 U.S. 291, 37 S.Ct. 270, 61 L.Ed. 726; Steffens v. United States, 2 Cir., 32 F. (2d) 206, cited by appellants, held only that where the signal did not definitely come from ahead the ship but very possibly from another direction, she was not required to stop under Article 16.
 
 
 5
 It is true that the Longview was able to stop before she ran into the Jessmore and was dead in the water when the collision occurred, and that the Jessmore, on the other hand, could not have stopped her headway in time even if she had tried on first sighting the Longview. But this fact does not excuse the Longview's failure to reverse her engines on first sighting the Jessmore, or her misleading signals proposing a port crossing when actually she was engaged in an attempt to make a starboard passing. These faults were considerable, certainly not so minor as to fall within the rule of The Umbria, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053, that 'immaterial' faults of one vessel are excused when the accident is due to the overshadowing faults of the other. We think the rule of The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148, places the burden upon the Longview to show that her fault could not have contributed to the collision. We think she did not discharge that burden. For we are reasonably convinced, as was the trial judge, that, if the Longview had stopped nearly a minute sooner, when the lookout first heard the signal, and had reversed her engines at that point, no collision would have occurred; the Longview would then have been entirely outside the 170-degree course of the Jessmore.
 
 
 6
 Affirmed.